IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**ROMA L. SIMS,**

    Petitioner,                                                 Case No. 2:15-cv-2391
                                                               Crim. No. 2:13-cr-0036
      v.                                                    CHIEF JUDGE SARGUS
                                                               Magistrate Judge King

**UNITED STATES OF AMERICA,**

    Respondent.

ORDER and
<u>REPORT AND RECOMMENDATION</u>

        Petitioner, a federal prisoner, has filed a motion to vacate pursuant to 28 U.S.C. § 2255. This matter is before the Court on the *Motion to Vacate under 28 U.S.C. § 2255* (ECF No. 134), as amended, *see Motion to Amend* (ECF No. 143); *Order* (ECF No. 147), Respondent's *Response to Motion to Vacate* (ECF No. 141), Petitioner's *Reply* ECF No. 146), Respondent's *Supplemental Memorandum Contra Defendant's Motion to Resentence under 28 U.S.C. § 2255* (ECF No. 148), Petitioner's *Reply to Supplemental Memorandum* (ECF No. 149), and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**.

        Petitioner's *Motion for Status* (ECF No. 153) is **DENIED**, as moot.

        Petitioner's request for an evidentiary hearing, presented in the *Reply to Supplemental Memorandum* (ECF No. 149), is **DENIED**.

        On April 30, 2013, Petitioner was charged with conspiracy to defraud the United States in violation of 18 U.S.C. § 286 (Count 1); conversion of U.S. funds in violation of 18 U.S.C. § 641 (Counts 2 through 21); wire fraud in violation of 18 U.S.C. § 1343 (Counts 22 through 31);

conspiracy to commit identity fraud in violation of 18 U.S.C. § 1028(f) (Count 32); aggravated identity theft in violation of 18 U.S.C. § 1028(a)(7) (Count 33); use of the personal identity information of other persons in order to commit criminal violations in violation of 18 U.S.C. § 1028A(a)(1) (Counts 34 through 49); conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h) (Count 50); and forfeiture of certain assets. *Superseding Indictment* (ECF No. 35.) On September 27, 2013, Petitioner pleaded guilty, pursuant to the terms of his negotiated *Plea Agreement* (ECF No. 69), to conspiracy to engage in fraudulent activity in connection with personal identification information (Count 32), wire fraud (Count 23), and use of the personal identity information of other persons in order to commit criminal violations (Count 35). *See Minute Entry* (ECF No. 80.) In a *Judgment* entered on August 25, 2014, the Court imposed an aggregate sentence of 100 months' incarceration, plus three years' supervised release, and ordered restitution in the amount of $3,517,534.00. *Judgment* (ECF No. 130.) Petitioner did not file an appeal from that judgment.

On June 10, 2015, Petitioner the *Motion to Vacate*. He claims that the Court improperly sentenced him on the charges of wire fraud and conspiracy to commit wire fraud by using tax and personal identifying information outside the charged conspiracy and the terms of his *Plea Agreement* (claim one); that he was denied due process because the Court failed to make reasonable loss amount calculations and improperly increased his sentence and loss amount (claim two); that he was denied due process because of an unfair apportionment of the amount of restitution among the co-defendants (claim three); that he was denied the effective assistance of counsel during plea negotiations and at sentencing (claim four); that there was an unwarranted sentencing disparity between Petitioner and his co-defendants (claim five); that he was denied a fair trial because of a malicious prosecution (claim six); and that his guilty plea was not

knowing, intelligent, or voluntary (claim seven).  Respondent contends that Petitioner's claims have been waived and fail to offer a basis for relief under 28 U.S.C. § 2255.

## Standard of Review

In order to obtain relief under 28 U.S.C. § 2255, a petitioner must establish the denial of a substantive right or a defect in the trial that is inconsistent with the rudimentary demands of fair procedure.  *United States v. Timmreck*, 441 U.S. 780 (1979); *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (*per curiam*).  Relief under 28 U.S.C. § 2255 is available when a federal sentence was imposed in violation of the Constitution or laws of the United States or where the trial court lacked jurisdiction, or where the sentence was in excess of the maximum sentence allowed by law, or is "otherwise subject to collateral attack."  *United States v. Jalili*, 925 F.2d 889, 893 (6th Cir. 1991).  Apart from constitutional error, the question is "whether the claimed error was a 'fundamental defect which inherently results in a complete miscarriage of justice." *Davis v. United States,* 417 U.S. 333, 346 (1974) (quoting *Hill v. United States*, 368 U.S. 424, 428–429 (1962)); *see also Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2006).  Nonconstitutional claims not raised at trial or on direct appeal are waived for collateral review except where the errors amount to something akin to a denial of due process.

It is well-established that a motion to vacate under § 2255 "is not a substitute for a direct appeal."  *Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013) (quoting *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003) (citing *United States v. Frady*, 456 U.S. 152, 167–68 (1982)). Accordingly, claims that could have been raised on direct appeal, but were not, will not be entertained on a motion to vacate under § 2255 unless the petitioner shows: (1) cause and actual prejudice to excuse his failure to raise the claims previously; or (2) that he is "actually

innocent" of the crime. *Ray*, 721 F.3d at 761 (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998)) (internal citations omitted).

### Claims One, Two, Three, Five, and Seven

In claim one, Petitioner alleges that he was over-punished for his convictions on the charges of wire fraud and conspiracy to commit wire fraud because the Court used tax and personal identifying information from 2009, but the charges involved only activity that took place between December 1, 2011, and January 31, 2013. According to Petitioner, the Court's consideration of 2009 tax information therefore constituted a constructive amendment or variance of the *Superseding Indictment*. Petitioner argues that his sentence therefore should be re-calculated using only data reasonably within the temporal bounds of the conspiracy as charged. Petitioner further argues that the *Indictment* and *Superseding Indictment* alleged a loss of $1.3 million, but that the government adopted a loss figure of $3.5 million when Petitioner agreed to enter a guilty plea. In claim two, Petitioner alleges that he was denied due process because the Court engaged in unreasonable loss calculation, and improperly increased his sentence on this basis. According to Petitioner,

> [t]he court acquiesced to a formula that held that every single return which was submitted to and from Roma's IP address was fraudulent, and that is unreasonable because Roma also ran a legitimate tax business through that IP; only a fraction of that traffic was fraudulent. Additionally, the number of victims alleged in the indictment was less than the calculated amount, and reflected in the plea agreement. Rules and decisional law require a reasonable estimation; this was not done in this case.

*Motion to Vacate* (Doc. 134, PageID# 483.) In claim three, Petitioner alleges that restitution was apportioned unfairly. In claim five, Petitioner alleges that there was an unwarranted sentencing disparity between Petitioner on the one hand and his co-defendants on the other. In claim seven,

4

Petitioner alleges that his guilty plea was not knowing, intelligent, or voluntary, and that the government breached the terms of his *Plea Agreement*.

Petitioner has waived all of these claims, which appear on the face of the record, by failing to raise them on direct appeal. *See United States v. Frady,* 456 U.S. at 165 ("[A] collateral challenge may not do service for an appeal.")(citations omitted). Therefore, Petitioner must establish cause and actual prejudice for this procedural default. *Id*. at 167. As cause for his procedural default, and in ground four of his § 2255 motion, Petitioner alleges the denial of the effective assistance of counsel.

## Ineffective Assistance of Counsel

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). In order to prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both that counsel's performance was deficient, or that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed" by the Sixth Amendment, and that this deficient performance prejudiced the petitioner. *Id*. at 687. This showing requires that defense counsel's errors were so serious as to deprive the defendant of a fair and reliable trial. *Id*.

"Surmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, 599 U.S. 356, 371 (2010). Given the difficulties inherent in determining whether an attorney's performance was constitutionally deficient, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. . . ." *Strickland*, 466 U.S. at 689. Nevertheless, "[a]n error by counsel, even if professionally

unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691.

In order to establish prejudice, a petitioner must demonstrate a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. *Strickland*, at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. Because a petitioner must satisfy both prongs of *Strickland* in order to demonstrate the ineffective assistance of counsel, should a court determine that the petitioner has failed to satisfy one prong, it need not consider the other. *Id*. at 697.

Because a criminal defendant waives numerous constitutional rights when he pleads guilty, the plea must be entered into knowingly and voluntarily in order to be constitutionally valid. *Boykin v. Alabama*, 395 U.S. 238, 244 (1969). "'The standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Sparks v. Sowders*, 852 F.2d 882, 885 (6th Cir. 1988) (quoting *North Carolina v. Alford,* 400 U.S. 25, 31 (1970)). In applying this standard, a court must look at the totality of circumstances surrounding the plea. *Id*. A criminal defendant's solemn declaration of guilt carries a presumption of truthfulness. *Henderson v. Morgan*, 426 U.S. 637, 648 (1976).

A defendant may challenge the entry of a plea of guilty on the basis that counsel's ineffectiveness prevented the plea from being knowing and voluntary. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). *Strickland's* two part test of deficient performance and prejudice also applies to challenges to guilty pleas based on a claim of ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *Sparks v. Sowders*, 852 F.2d at 884. In order to establish prejudice in the context of a guilty plea, "the defendant must show that there is a reasonable

6

probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. at 58-59.

### Application

As noted *supra*, Petitioner was charged by way of *Superseding Indictment* (Doc. 35) on one count of conspiracy to defraud the United States, twenty counts of conversion of U.S. funds, nine counts of wire fraud, one count of conspiracy to commit identify fraud, one count of aggravated identity theft, nineteen counts of use of personal identity information of other persons in order to commit criminal violations, and one count of conspiracy to commit money laundering offenses. *Id*. (PageID# 144-158.) Pursuant to the terms of his negotiated *Plea Agreement*, Petitioner pleaded guilty to Counts 23, 32, and 35 and the government agreed to dismiss all of the remaining charges against him, and to not pursue any further criminal charges involving this case. *Plea Agreement* (ECF No. 69, PageID# 247.) Petitioner obtained a two level reduction in his recommended sentence under the advisory United States Sentencing Guidelines for timely notifying the authorities of his intention to plead guilty, and a one point reduction for his acceptance of responsibility. *Presentence Investigation Report*, ¶¶ 44, 45. Pursuant to the explicit terms of his *Plea Agreement*, Petitioner agreed that

> determination of both the loss and restitution involves the facts circumstances of all false and fraudulent tax refunds received through the conspiracy involved herein and all funds that were wired into, or otherwise deposited in, bank accounts controlled by the conspirators. Defendant ROMA L. SIMS understands that the Internal Revenue Service has calculated the loss in this case to be $3,517,534.00, which represents the total of the tax refunds received for the 2010, 2011 and 2012 tax years[.]

*Plea Agreement* (ECF No. 69, PageID# 247-48.) Petitioner further indicated that he understood that calculations regarding the amount of loss were not binding and that the final determination would be made by the Court. *Id*. (PageID# 248.) Petitioner agreed that he had a total offense

7

level of 35 under the advisory United Sates Sentencing Guidelines before applying reductions for his acceptance of responsibility. *Id.*

At the time that he entered his guilty pleas, Petitioner indicated that he had discussed with his attorney the case and any possible defenses available to him. *Transcript* (Doc. 137, PageID# 520-21.) He had told his attorney everything that he knew about the case, and believed that his attorney had all of the information needed to provide him with sound legal advice. *Id.* (PageID# 523.) Petitioner was satisfied with the advice and representation of counsel. *Id.* The Court reviewed with Petitioner all of the elements of the offenses. *Id.* (PageID# 523-26.) Petitioner indicated that he understood. *Id.* The Court advised Petitioner that he faced up to twenty years imprisonment on Count 23, up to fifteen years on Count 32, and a consecutive term of two years on Count 35. Petitioner at all times indicated that he understood. *Id.* (PageID# 526-28.) Petitioner also understood that he would be required to make restitution. *Id.* (PageID# 526-27.) The Court advised Petitioner of all of the rights that he was waiving by entry of his guilty plea; Petitioner indicated that he understood. *Id.* (PageID# 528-31.) The attorney for the government reviewed the terms of the *Plea Agreement*, indicating that the IRS had calculated the loss to be over $3.5 million for tax refunds for the years 2010, 2011, and 2012. *Id.* (PageID# 532.) Petitioner agreed with the terms of the *Plea Agreement* as recited by the prosecutor. He denied that any other promises had been made or that he had been threatened into entering a guilty plea. *Id.* (PageID# 533-34.)

Special Agent Lisa DiSalvo presented the facts of the case, indicating that, between at least 2009 through January 31, 2013, Petitioner had originated and had conspired with Samantha Towns, Robert Earthman, and others, to execute a fraudulent federal tax refund scheme which had generated over $3.5 million in false refunds:

The conspiracy involved the preparation and electronic filing of fraudulent income tax returns with the IRS primarily on behalf of innocent persons from whom personal identification information, also known as PII, had been collected. The tax returns sought false and otherwise unwarranted refunds which were wired into one of several bank accounts controlled by Sims and Towns. Sims used a variety of advertising schemes utilizing the internet, mailed advertisements and printed advertisements to collect PII principally from low-income or unemployed single parents with children.

He tricked innocent taxpayers who responded to his advertisements into providing their personal information via the phone and/or internet and then prepared and electronically filed false tax returns with IRS in their names. The false tax returns always incorporated false Schedule C businesses and Earned Income Tax Credits which generated bogus refunds.

In a March 2010 craigslist advertisement posted on the internet, Sims purported to be a church giving money to needy families. The ad read, we are The Church of our Lord Jesus Christ. This month our tithes and offerings will go to the homeless and unemployed families with small children. You must not have a source of income or have received an income tax refund. Please call our prayer hotline 1-800-380-7080.

Sims also placed weekly ads in cities all over the country in an employment newspaper called Jobs Weekly. Many of the victims who responded to these ads picked up the newspaper in the unemployment office. The ads read, unemployed parents receive income tax return, 1500 for 1 child, 3,000 for 2 children, and 4,000 for 3 children. Call now 1-800-583-8840. WWW.X-PRESSTAXES.COM.

Beginning around December 1st, 2001, and continuing through January 31st, 2013, Sims found another source of PII to use in a scheme; namely, stolen PII from confidential Commonwealth of Kentucky sources. The source of the stolen PII was co-conspirator Robert Earthman who was an employee of Xerox State & Local Solutions, Inc., a vendor for the Commonwealth of Kentucky, Department for Income Support. Through his employment with Xerox, he accessed the Kentucky Child Support Enforcement database which contained PII of single parents with children who were recipients of child support. Many of these single parents were also recipients of either Social Security benefits, disability benefits or other public assistance programs administered by

9

Kentucky, such as Medicaid and food stamps. Earthman stole the PII and provided it to Towns and Sims who operated their part of the scheme in the Southern District of Ohio.

Sims used stolen names, Social Security numbers and dates of birth to prepare and file fraudulent income tax returns with IRS seeking bogus tax refunds. The Commonwealth of Kentucky reported over 700 names of single parents stolen from the child support enforcement database. Returns prepared and filed using the stolen Kentucky PII reported unwarranted tax refunds exceeding 1.7 million.

In connection to Count 32, the following acts, among others, were committed in furtherance of the conspiracy in violation of Title 18 1028(f):

Between January 17 and February 4, 2012, co-conspirator Towns opened five checking accounts in the name of XPT at five different banks in the Columbus, Ohio area.

On or about January 7, 2012, co-conspirator Earthman provided Towns and Sims with the stolen PII of more than 75 individuals who received food stamps, child support, disability or other public assistance.

Between January 17 and July 5, 2012, approximately 559 fraudulent tax returns for tax year 2011 were prepared and electronically filed with IRS. Those returns were filed principally on behalf of unsuspecting persons whose PII had been stolen. Unwarranted and fraudulent tax refunds of $1,312,513.89 were issued and wired interstate into the five checking accounts opened and maintained by Towns.

Between January 17 and January 25, 2003, [sic][1] Sims prepared and electronically filed with IRS approximately 32 fraudulent tax returns for tax year 2012. Most of those returns were filed using the PII of unsuspecting persons whose PII had been stolen by Earthman and provided to Sims. Unwarranted and fraudulent tax refunds of $166,830 were issued and wired into a checking account opened and maintained by Towns. Most of the refunds for tax years 2011 and 2012 were retained and spent by co-conspirators. Earthman personally received more than $1,000 each year that he assisted his co-conspirators.

---

[1] Counsel corrected the statement to indicates that the date were between January 17 and January 26, 2013, not 2003. *Transcript, Excerpt, Statement of Facts* (Doc. 123, PageID# 439.)

> In connection to Counts 23 and 35, Sims also committed wire fraud and aggravated identity theft in violation of Title 18 USC 1343 and 18 USC 1028A as follows:
>
> A fraudulent 2011 tax return was electronically filed on January 24, 2012 using PII of Barbara Walters of Russell Springs, Kentucky. The return contained a fictitious Schedule C business purporting that Walters was a massage therapist who had earned a net profit of $10,560. This tax return resulted in a refund of $3,655 which was wired interstate into a bank account in Columbus, Ohio controlled by the co-conspirators. Walters, who has been on disability since the age of 17, is a single parent of three children. She became homeless for two months as a direct result of the filing of this fraudulent tax return.
>
> The investigation revealed that Sims was responsible for the preparation and filing of approximately 977 tax returns for the 2010, 2011, and 2012 tax years which netted more than 3.5 million in bogus tax refunds.

*Transcript, Excerpt, Statement of Facts* (Doc. 123, PageID# 439.) Defense counsel agreed that the conspiracy was responsible for $3.5 million loss; however, counsel did not agree that Petitioner should be held personally responsible for that amount. *Id.* (PageID# 439.) Otherwise, Petitioner agreed to the truth and accuracy of those facts. *Id.* (PageID# 440.) He admitted his guilt to the offenses charged. *Id*.

At sentencing, defense counsel withdrew the objection to the total loss involved in the case, indicating that "[t]he government did provide a detailed spreadsheet with the detailed amounts and tax returns that were filed and the refunds that were issued by the IRS, which amount – they surpass the 2.5 million threshold[.]" *Transcript of Sentencing* (Doc. 136, PageID# 497.) The probation officer calculated Petitioner's total offense level to be 32, with a criminal history category of II, resulting in a recommended sentencing range under the United States Sentencing Guidelines of 151-188 months, plus a 24 month consecutive term on Count 35. *See Presentence Investigation Report*. The probation officer recommended a sentence of 151

11

months on Counts 23 and 32, plus 24 months on Count 35, for an aggregate term of 175 months' imprisonment. *Id.* Defense counsel objected, arguing that Petitioner's criminal history score overstated his criminal history; the Court reduced Petitioner's criminal history category, which reduced Petitioner's recommended guideline sentence to a range of 135 to 168 months' incarceration. *Transcript of Sentencing* (Doc. 136, PageID# 497-501.) Defense counsel argued for a downward variance in sentencing. *Id.* (PageID# 501-06.) Petitioner expressed his remorse. *Id.* (PageID# 506-07.) The Court imposed an aggregate term of 100 months in prison and ordered restitution in the amount of $3,517,532. *Id.* (PageID# 514.)

Petitioner maintains that his recommended guideline sentence should have been between 51 and 63 months' imprisonment based on a total number of between 50 and 250 victims, and a loss that exceeded $1 million but was less than $2.5 million. *Motion to Amend* (Doc. 143, PageID# 565.) However, Petitioner admitted his guilt, under oath, to facts indicating that, between January 17 and July 5, 2012, alone, as a part of the conspiracy charged, approximately 559 fraudulent tax returns for tax year 2011 were prepared and electronically filed with the IRS, resulting in the issuance of $1,312,513.89 in fraudulent refunds. He agreed to facts indicating that, between January 17 and January 25, 2013, he personally prepared and electronically filed with the IRS approximately 32 fraudulent tax returns for tax year 2012 using the stolen PII's of unsuspecting persons resulting in $166,830 of fraudulent tax refunds. Additionally, he agreed that returns prepared and filed using the stolen Kentucky PIIs resulted in unwarranted tax refunds exceeding $1.7 million. Petitioner specifically agreed that he was personally responsible for the preparation and filing of approximately 977 tax returns for the 2010, 2011, and 2012 tax years.

> [T]he representations of the defendant, his lawyer, and the prosecutor at [the guilty plea hearing], as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn

> declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

*Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977)(citations omitted). Such are the circumstances here.

The record does not reflect that the government would have been unable to establish the charges against Petitioner, particularly since the co-defendants also entered guilty pleas and, presumably, would have been available to testify against Petitioner. Pursuant to the terms of his *Plea Agreement*, Petitioner secured the dismissal of numerous charges against him, thereby dramatically decreasing his potential prison exposure. Further, his defense counsel successfully argued for a decrease in Petitioner's recommended sentence under the advisory United States Sentencing Guidelines, and thereby secured a sentence for Petitioner that fell well below that which had been recommended. In short, Petitioner has failed to establish the denial of the effective assistance of counsel in connection with the entry of his guilty plea and he has failed to establish that he would not have pleaded guilty but for the ineffective performance of his counsel or had he known that he may be held responsible for a loss of more than $3.5 million.

Contrary to Petitioner's allegation here, *Petitioner's Response* (Doc. 146, PageID# 574), the record reflects that, of the $3,517,539.00 in restitution ordered, $1,312,513.89 was to be paid jointly and severally by the co-defendants in this case. *Judgment* (Doc. 130, PageID# 465.) Nothing in the record supports Petitioner's current claim that restitution was apportioned unfairly between Petitioner and the co-defendants in this case.

Pursuant to the terms of his *Plea Agreement*, Petitioner agreed to facts presented in support of the charges to which Petitioner pleaded guilty. The record does not establish the breach of the terms of his *Plea Agreement* or a constructive amendment of the *Superseding*

13

*Indictment* (ECF No. 35). Agent DiSalvo's reference to the fact that the conspiracy originated in 2009 does not alter this conclusion. Moreover, the filing of tax returns for the tax year 2010 would have occurred in 2011. Therefore, the reference to these dates did not constructively amend the indictment nor did it result in Petitioner being held responsible for acts that occurred outside the dates of the conspiracy charged. Moreover, nothing in the *Superseding Indictment* limited the amount of loss attributable to him.

Further, at the time that he signed his *Plea Agreement* and entered his guilty pleas, Petitioner indicated that he was aware that the government was alleging a loss amount of approximately $3.5 million. The record fails to support Petitioner's current allegation that the government overstated the amount of loss, that the loss related to years not included in the conspiracy charged, or that the charges at issue involved fewer than 250 victims. To the contrary, the record reflects that the charges involved 977 victims, and involved the filing of approximately 977 fraudulent tax returns for tax years 2010 through 2012, resulting in the IRS issuing approximately $3.5 million in unwarranted tax refunds. *See Presentence Investigation Report*, ¶ 23.

Although Petitioner initially disputed that he was personally responsible for this amount, his attorney withdrew that objection at sentencing, based on his review of a detailed spreadsheet and other documents provided by the government. *Transcript of Sentencing* (Doc. 136, PageID# 497.) Counsel further indicated:

> As a part of the information possessed by the Government regarding Petitioner's case there was a significant amount of discovery that was reviewed and discussed with Petitioner.
>
> Prior to trial a proposed plea agreement was provided by Daniel A. Brown, the Assistant United States Attorney ("AUSA") who prosecuted the case.

14

> I recall discussing the plea agreement with Petitioner, explaining the nature of each charge, the elements of each offense, and how the United States Sentencing Guidelines applied in his case.
>
> \*\*\*
>
> Prior to sentencing, in addition to the initial discovery, the Government provided, and I discussed with Petitioner, a detailed spreadsheet with the specific amounts of tax returns that were filed and the refunds that were issued by the Internal Revenue Service.
>
> \*\*\*
>
> Petitioner was apprised of all case related matters and every issue was discussed with him during pretrial stages and prior to sentencing.

*Sworn Statement of Jose B. Velez, Esq.* (Doc. 141-1, PageID# 558-60.)

Under these circumstances, this Court concludes that Petitioner has failed to establish the ineffective assistance of counsel in connection with his guilty pleas. The transcript reflects that Petitioner knowingly, intelligently, and voluntarily entered his guilty plea with a full understanding of the amount of restitution at issue. In view of this record, Petitioner's allegations lack record support and are unworthy of credit.

Petitioner also argues that there was an unwarranted sentencing disparity between himself and his co-defendants in this case, and that he was denied the effective assistance of counsel because his attorney failed to raise this issue. *Petition* (Doc. 134, PageID# 492.) However, the record indicates that counsel in fact raised this issue at sentencing, and argued that the facts of the case warranted an downward departure to an aggregate term of 84 months. *Transcript of Sentencing* (Doc. 136, PageID# 505-06.) The Court nonetheless rejected this argument. *Id.* (PageID# 512-14.)

Petitioner also alleges that his attorney failed to counsel him regarding the possible pursuit of an appeal, *Motion to Vacate* (Doc. 134, PageID# 488), and that his attorney failed to

15

preserve his right to appeal his sentence, *Motion to Amend* (Doc. 143, PageID# 564.)  Defense counsel responds, "I recall discussing with Petitioner the right to appeal the sentence imposed immediately after the sentencing hearing.  Petitioner declined to file a Notice of Appeal." *Sworn Statement of Jose B. Velez, Esq*. (Doc. 141-1, PageID# 560.)  Petitioner does not actually allege, and the record does not reflect, that Petitioner requested his attorney to file an appeal but that his attorney failed to do so.  Moreover, the record establishes that the Court advised Petitioner of his right to appeal at the sentencing hearing, and of the time period for doing so.  Petitioner stated on the record that he did not wish to pursue an appeal.

> COURT:  Mr. Sims, it is also my obligation to review with you your right to appeal the sentence I have just imposed.  If you wish to appeal, you must file a written notice within 14 days from today's date.  If you are unable to afford the filing fee or a lawyer to represent you, you may apply to the Court, and the filing fee may be waived and a lawyer appointed to represent you.
>
> Do you understand your right to appeal?
>
> MR. VELEZ:  Yes, Your Honor.
>
> COURT:  Do you wish to appeal the sentence that I have just given you?
>
> MR. VELEZ:  No, Your Honor.
>
> COURT:  Again, you have up to fourteen days if you change your mind.

*Transcript of Sentencing* (Doc. 136, PageID# 515-16.)  Thus, Petitioner has failed to establish the denial of the effective assistance of counsel in this regard.

## Claim Six

In claim six, Petitioner alleges that he was the victim of malicious prosecution.  Petitioner was one of three (3) defendants charged in this case. In light of the entire record, his claim of malicious prosecution is utterly without support.

16

**Recommended Disposition**

Therefore, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

Petitioner's *Motion for Status* (ECF No. 153) is **DENIED**, as moot.

Petitioner's request for an evidentiary hearing, presented in the *Reply to Supplemental Memorandum* (ECF No. 149), is **DENIED**.

**Procedure on Objections**

If any party objects to this *Report and Recommendation*, that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

                                                    *s/ Norah McCann King*
                                                   Norah McCann King
                                                   United States Magistrate Judge

December 22, 2016